**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **THEODORE A. ROBB, JR.,** | * |
| **Plaintiff** | * |
| v. | * |
| | *     CIVIL No. JKB-14-1421 |
| **MARYLAND AVIATION ADMINISTRATION** | * |
| | * |
| **Defendants.** | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM AND ORDER**

Theodore A. Robb, Jr. ("Plaintiff") brought this suit *pro se* against the Maryland Aviation Administration ("MAA" or "Defendant") alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*. Now pending before the Court is Defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 5.)  The issues have been briefed and no hearing is required.  Local Rule 105.6.  For the reasons set forth below, the motion will be denied.

    **I.**    **BACKGROUND**[1]

From December 17, 1986 until he retired on December 11, 2012, Plaintiff worked at MAA's Fire and Rescue Department ("FRD"), based out of the Baltimore/Washington International Thurgood Marshall Airport ("BWI"). (ECF No. 9 at 2; No. 5-3.)  Plaintiff, who began as a groundkeeper, ended his career as Airport Fire Lieutenant, a position he was

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

promoted to in 2008.  (ECF No. 9 at 2.)  Following his retirement, Plaintiff continued working for MAA as an "Airport Management Officer I" with the Office of Operations.  (ECF No. 5-3.)  He served in that capacity from December 12, 2012 until he resigned on March 12, 2013.  (*Id.*)

On a number of occasions, between October 19, 2011 and February 5, 2012, Plaintiff found the fire station mop, broom, and other janitorial equipment placed in front of his bunkroom door.  (ECF No. 1-1.)  Plaintiff explains that "white employees left the mop to demonstrate [that Plaintiff was] an inferior and only good enough to serve as the fire station janitor or custodian."  (*Id.* at 2.)

The exact number of occasions on which Plaintiff found a mop in front of his bunkroom door is not altogether clear.  However, the Court's best understanding of Plaintiff's pleadings is that the first instance was on October 19, 2011.  (ECF No. 1-1 at 2-3; No. 5-2; No. 9 at 6.)  On that day, Gregory Scott, who worked as a driver/operator at the FRD, "and three other white subordinates" placed "janitorial equipment" outside of Plaintiff's bunkroom door. (ECF No. 5-2.)  The second and third instances occurred on January 7, 2012, when on two distinct occasions, Plaintiff found the mop placed in front of his door.  (ECF No. 1-1 at 4.)  Then, on January 28, Plaintiff again found that "the station mop and vacuum [cleaner had both been] left in front of his bunkroom doorway."  (*Id.* at 7.)  In each of these instances, Plaintiff suspected that Scott was principally responsible.  (*Id.* at 2-3, 4, 7.)

On February 1, 2012, Plaintiff witnessed Michael Reid, who, like Scott, worked as a driver/operator at FRD, placing a mop in front of Plaintiff's bunkroom door.  (ECF No. 1-1 at 8.)  A sixth instance occurred on February 5, 2012, when Reid, again, placed a mop in front of Plaintiff's door.  (ECF No. 1-7.)

Plaintiff repeatedly reported these incidents to his supervisors. On January 8, 2012, he e-mailed Woodrow Cullum, who was the Director of FRD, reporting that "[o]n or about Saturday, January 7, 2012, on several occasions through-out the day a station mop has been left in front of my bunkroom." (ECF No. 1-1 at 4; No. 1-3.) He further noted that he "believe[d]" Scott was responsible for this incident. (ECF No. 1-3.)

Following this e-mail, on January 9, 2012, Cullum sent an e-mail to all FRD supervisors on "how to hold employees accountable for their actions."[2] (ECF No. 1-1 at 4; No. 1-9.) On January 16, 2012, Cullum sent two more e-mails. The first reminded all FRD employees that "as employees of the Maryland Aviation Administration we need to treat fellow employee's [sic], supervisors and our customers with civility and respect at all times." (ECF No. 1-1 at 4; No. 1-8.) The second, addressed to "selected personnel," warned that improperly stored cleaning equipment represented a tripping hazard. (ECF no. 1-1 at 5.)

Then, on January 19, 2012, Plaintiff met with Cullum, as well as with William Stewart, the Division Chief of Operations at FRD, to discuss his January 8 e-mail. (ECF No. 1-1 at 5; ECF No. 1-6.) At this meeting, Cullum "commended Lt. Robb [, i.e., Plaintiff,] for his ability to deflect the innuendos made toward him without getting upset and encouraged [Plaintiff] to continue to maintain his professional attitude and demeanor." (ECF No. 1-1 at 5; No. 1-6.) Cullum also asked Plaintiff if he wanted to be reassigned to another shift. (ECF No. 1-6.) However, Plaintiff declined and explained that he wished to remain on the "C" shift until his retirement. (*Id.*)

On January 31, 2012, Plaintiff complained about the January 27 and 28 incidents, this time to Stewart. Plaintiff noted that he believed "Driver/Operator Rob Scott and other C shift

---

[2] Although Plaintiff alleges that the e-mail was sent on January 9, 2012, the Court notes that the timestamp on the e-mail itself reads *February* 9, 2012. (ECF No. 1-9.)

3

personnel" were responsible for the incident. (ECF No. 1-4.) He further provided that the incidents constituted "unfair work practices, which is creating a hostile work environment to intimidate." (*Id*.) Stewart told Plaintiff that he needed to meet with the Director of the MAA Office of Fair Practices ("OFP"), Angela Martin. (ECF No. 1-1 at 7.) However, it is unclear whether or not Plaintiff did so. (*Id.* ("[H]owever Lt. Robb did not want to discuss the harassment incident with [OFP] . . . .").)

Later, Plaintiff also complained to Stewart about the February 5 incident involving Reid. (ECF No. 1-1 at 8; No. 1-7.) In response to this complaint, Stewart had a discussion with Reid in which Stewart explained that there "had been . . . some issues with C shift personnel leaving cleaning items in front of Lt. Robb's bunkroom door." (*Id.*)

Plaintiff acknowledges that OFP has alleged that "Fire Chief Cullum reprimanded D/O Scott and the MAA considered the matter closed after imposing disciplinary action." (*Id.* at 10.) However, Plaintiff disputes this claim and alleges that "[f]rom October 19, 2011 to May 18, 2012 the (MAA) [sic] took no corrective actions." (*Id.* at 11.)

The Court notes that in his response to Defendant's motion to dismiss, Plaintiff has alleged that he had "no authority to manage the actions of subordinates." (ECF No. 9 at 7.) In his pleading, however, Plaintiff has stated that he ordered Scott "to stand and leave" and has described himself as a supervisor. (ECF No. 1-1 at 3; No. 7.) In light of the fact that the Court is ruling on a motion to dismiss and that Plaintiff is *pro se*, the Court will interpret Plaintiff's statements as an allegation that he, in fact, had "no authority to manage the actions of subordinates." (ECF No. 9 at 7.)

On April 11, 2012, Plaintiff filed a charge of employment discrimination with the EEOC. (ECF No. 7 at 6-9.)[3]  However, his paperwork was lost, and therefore, Plaintiff filed a new charge with the EEOC on April 25, 2013.[4]  (ECF No. 5-2.)  On January 31, 2014, Plaintiff received a "right to sue" letter from the EEOC.  (ECF No. 1-1 at 1.)  Following that, on April 28, 2014, Plaintiff filed the present action.  (ECF No. 1.)

II.     **LEGAL STANDARD**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is a test of the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions.  *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007).  In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed.  *Iqbal*, 556 U.S. at 679.

Where, as here, a plaintiff files *pro se*, he is held to a "less stringent standard" than is a lawyer, and the court must construe his claims liberally, no matter how "inartfully" pled.  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *accord Brown v. North Carolina Dept. of*

---

[3] There are some discrepancies about the exact date.  (*See* ECF No. 1 ("I filed charges on the following date: April 22, 2012.); No. 12 at 1 n.1 ("[A]lthough the date stamp is difficult to read, it appears to be "April 18, 2012.").)
[4] In light of these facts, Defendants have withdrawn their argument that the present action is untimely.  (ECF No. 12 at 1 n.1.)

*Corrections,* 612 F.3d 720, 724 (4th Cir. 2010) (observing that liberal construction of a complaint is particularly appropriate where a *pro se* plaintiff alleges civil rights violations). However, even a *pro se* complaint must meet a minimum threshold of plausibility. *See, e.g., O'Neil v. Ponzi,* 394 Fed. App'x. 795, 796 (2d Cir. 2010).

### III.   ANALYSIS

Defendants have moved for the Court to dismiss Plaintiff's claim of discrimination on the basis that "Plaintiff has not stated a plausible claim of a racially hostile work environment under Title VII." (ECF No. 5 at 8.) In order to adequately state such a claim, a Plaintiff must allege that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration in original) (quoting *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010)).

Although the Court acknowledges that this case represents a close call, it finds that Plaintiff's allegations are sufficient to survive the present motion to dismiss. However, the Court emphasizes that Plaintiff's allegations are barely sufficient to do so.

First, as Defendant concedes, Plaintiff has adequately pleaded that the conduct was unwelcome. (ECF No. 5-1 at 9.) Second, the Court finds that Plaintiff has pleaded sufficient facts to support the inference that the conduct was based on his race. Indeed, he has pleaded that the janitorial equipment was left by white firefighters (ECF No. 1 at 2) and that no other employees were subject to such conduct (ECF No. 7). Further, Plaintiff has explained that he believes the "white employees left the mop to demonstrate [that Plaintiff was] . . . an inferior and only good enough to serve as the fire station janitor or custodian." (ECF No. 1-1 at 2.) Although

Plaintiff's allegations do not clearly establish that the conduct was based on race, the Court finds that they are sufficient to support such an inference at this point in the proceedings.

Next, the Court finds that the conduct was "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Okoli*, 648 F.3d at 220. In coming to this conclusion, the Court examines "all the circumstances [, including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Here, the Court's conclusion is compelled most strongly by the fact that there were six instances of the unwelcome conduct. Further, as mentioned above, in light of the fact that the motion before the Court is a motion to dismiss, the Court will continue to draw the inference that the conduct at issue was humiliating and discriminatory and that it was motivated by Plaintiff's race.

Finally, the Court finds that the conduct is "imputable to the employer." *Okoli*, 648 F.3d at 220. Where, as here, an employee has been harassed by a coworker, "the employer may be liable in negligence [under the fourth element] if it knew or should have known about the harassment and failed to take effective action to stop it." *E.E.O.C. v. Xerexes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011) (quoting *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 333-34 (4th Cir. 2003) (en banc)) (alteration in original). Stated differently, "[o]nce the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment." *Id.* (quoting *EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 319 (4th Cir. 2008)). Here, according to Plaintiff's pleadings, Defendant was repeatedly put on notice about the harassment. However, Defendant's response was limited to a few e-mails regarding "how to hold employees accountable for their

actions" (ECF No. 1-9), treating co-workers with "civility and respect" (ECF No. 1-8), and the tripping hazard caused by improperly stored cleaning equipment (ECF No 1-1 at 5). In addition, Cullum asked Plaintiff if he wanted to be reassigned to another shift. (ECF No. 1-6.) However, beyond those measures, Plaintiff alleges that that "[f]rom October 19, 2011 to May 18, 2012 the (MAA) [sic] took no corrective actions" (ECF No. 1-1 at 11) and that the harassing conduct did not stop (ECF No. 1-1 at 8; No. 1-7).[5] The Court finds that such actions do not constitute "remedial action reasonably calculated to end the harassment." *Xerexes Corp.*, 639 F.3d at 669. In particular, the Court notes that none of these measures directly addressed or acknowledged the fact that Plaintiff was being harassed on account of his race.

Therefore, the Court finds that Plaintiff has pleaded enough factual content to render his claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, Defendant's motion to dismiss (ECF No. 5) is denied.

## IV. CONCLUSION

For the reasons stated herein, it is therefore ORDERED that Defendant's motion to dismiss (ECF No. 5) is DENIED.

Dated this 15th day of August, 2014.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

---

[5] Although Defendant may dispute Plaintiff's factual allegations, at this stage in the proceedings, the Court's inquiry is limited to testing the sufficiency of Plaintiff's allegations.